MANN'S BOUDOIR CAR COMPANY, Respondent, *v.* GILBERT CAR MANUFACTURING COMPANY, Appellant.

*Payment of a royalty for the use of a patent — an agreement made with a patentee who has assigned the patent inures to the owner of the patent.*

When one uses a patent, under an agreement made with the patentee to pay for the use thereof certain sums, mentioned in a portion of the correspondence constituting the agreement as "royalties" and "commissions," but which terms are, it appears, used synonymously, so that the agreement is in fact an entire contract for the payment of royalties, and such agreement is made under the mutual-mistaken assumption that the patentee is entitled to enter into the agreement on his own account, whereas it appears that the right to royalties belonged at the time to a third party, to whom the patent had been assigned by the patentee, the contract for the payment of the royalties for the use of the patent inures to the owner of the patent, and he, and not the patentee, will be entitled to receive from the user of the patent the whole sum agreed to be paid for its use.

APPEAL by the defendant, the Gilbert Car Manufacturing Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 6th day of April, 1892, upon the report of a referee.

*Charles E. Patterson,* for the appellant.

*G. W. Cotterill,* for the respondent.

O'BRIEN, J.:

The single question involved is whether the defendant should pay to the plaintiff, or to William D. Mann, five per cent on the contract price as royalty for using the plaintiff's patents in the manufacture of four sleeping cars sent to Australia.

It was conceded on the trial that Mann was originally the owner of the letters patent covering the inventions used by the defendant in the manufacture of four sleeping cars, and that the said letters patent were assigned to plaintiff prior to the making of the contract with defendant. And were it not for a doubt which evidently existed in the mind of Mann as to the extent and character of his assignments to the plaintiff, no controversy could have arisen. The fact, however, that Mann assumed that, although he had assigned his letters patent covering the inventions which the defendant used,

and for which it agreed to pay a compensation, he still retained his ownership with respect to cars to be manufactured for export, for which the cars manufactured by defendant were intended, introduced ·in the relations between the parties confusion and doubt, which has necessitated this action. It is evident from an examination of the correspondence between the parties, beginning with the letter from Mann to the defendant, under date of July 3, 1885, that Mann, though known by the defendant to be the president of the plaintiff company, acted as though the contract he was about to make with the defendant company was on his behalf, and for his own benefit; for that letter begins by saying: " I have an opportunity to build four cars for Australia. * * * I propose to furnish the following articles myself;" and it closes as follows: "If so will you quote me a price, I furnishing the materials as above." In answer to this letter, under date of July sixth, and particularly in the letter of July seventh, which was the letter containing the agreement on the part of the defendant, the defendant wrote under the impression that it was dealing with Mann personally, for throughout the latter letter it is the individual and not the president of the company who is referred to and spoken of by defendant.

We think that this error into which seemingly both Mann and the defendant had fallen, is important and material as bearing upon the question whether the contract made between the parties involved the payment of royalties to one, and as separate and distinguished therefrom, a commission to another. It has also a bearing upon the weight to be attached to the expression in that letter, upon which so much stress is placed by the defendant as supporting the view of a divisible obligation, viz., " and to this we will add to contract price a commission of five per cent to you." Keeping in mind the language quoted from Mann's letter of July third, what the defendant proposed to do and for whom, is thus expressed in the answer thereto of July seventh, already referred to :

" In the first place we would propose furnishing the materials mentioned in yours of 3rd inst. as the materials you would furnish, you giving us descriptions of the kinds, and such other information as you have at command. In other words we to build and furnish the cars complete for a round sum, and in the second place, we would suggest your giving us your influence with Mr. Evans to

secure this order, and in the event of our securing the same, we would pay you royalty as per your letter of September, 1884, giving us permit to build for export, to wit: One thousand dollars per car for royalty on sleeping car patents, and two hundred and fifty dollars for patent ventilation, making twelve hundred and fifty dollars per car, and to this we will add to contract price a commission of five per cent to you."

We think that the claim made by Mann as to not having assigned his rights with respect to cars intended for export, and the subsequent abandonment of such position, together with the entire correspondence between the parties, show that when the contract was made between them it was a single and indivisible contract and agreement made by the defendant, under which it was to pay in the way of royalty and commission the amounts as specified in the letter of July seventh; that as correctly held by the referee, these words, "royalty" and "commission" were used interchangeably and as synonymous by both the parties throughout their correspondence, and that the claim now advanced, that the royalties were to go to plaintiff and a commission as separate and distinct therefrom to Mann, is purely an afterthought, resorted to, no doubt, for the very proper purpose of assisting the defendant to collect in part, at least, the sum which was due it from Mann. This view is enforced by the fact that, although the matter of what was to be paid by the defendant, namely, $5,000 and five per cent, was always referred to and spoken of as royalties, it was not until the 4th of January, 1886, that in inclosing the note for $5,000, the defendant for the first time separated the $5,000 claim, which it conceded belonged to plaintiff, and the five per cent, which is thus referred to in the letter of that date: "Our counsel advises us as we have judgment against Col. Mann for claims greater than the five per cent commission at the time he assigned his rights to your company, that," etc. Thus the position which, throughout the relations between the parties, the defendant had taken of regarding the sums to be paid as payable to the same person under one indivisible contract, was continued down to December 19, 1885, by defendant writing: "We have no hesitation in saying we will pay your company the royalties, which we much prefer doing." During all this time there was not the slightest intimation or suggestion that there was any question with

regard to the five per cent, especially as an independent matter, and it would serve no useful purpose to take extracts from the letters written by defendant to show how consistent up to January, 1886, had been the latter's position in regarding it as a single sum, whether spoken of as royalty or commission, and payable to a single person.

As we have said, the whole trouble arose out of the mistake into which Mann had fallen, of regarding himself as the principal in the transaction in dealing with the defendant. The evidence shows that long prior to the contract the defendant knew that Mann was the president of the plaintiff company, and Mann himself testified that the assignments of the patents had been shown to Mr. Gilbert, one of the officers of the defendant company. This mistake, however, was finally straightened out, as shown by the correspondence with and notification to the defendant, by the withdrawal by Mann from his untenable legal position, and by the consent of the person to whom Mann had attempted to make an assignment of the use of the patents for export trade, to the payment to plaintiff. The position, therefore, as shown by the entire transactions and correspondence was, that the defendant made a contract originally with Mann for the payment to him by way of royalty for the use of the patents the amounts specified in the letter of July seventh, and that both Mann and the defendant subsequently discovered that the rights in and to this contract were justly and legally claimed as belonging to plaintiff.

Upon well-settled principles of law, it being conceded by defendant itself that plaintiff was entitled to whatever was due by way of royalties, we fail to see why the plaintiff should not recover as held by the referee, in addition to the other amounts, the five per cent on the contract price, which was referred to in the letter of July seventh as a commission. It is evident that the entire amount there offered to be paid was intended to go to Mr. Mann by way of royalty for the use of these patents by the defendant; and that this is so is evidenced by Mr. Mann's own letter in reply, stating that he quoted the same terms to other parties, which included the five per cent on the contract price as sued for here, and which was therein spoken of and designated by Mr. Mann as a royalty to be paid for the use of such patents. That the defendant did not intend to pay

a royalty to plaintiff and in addition a commission to Mr. Mann separate and distinct therefrom, as contended upon the trial and this appeal, is conclusively shown by the testimony, and were it not for the language used, " a commission of five per cent to you," there would be no room for argument. But with this in the case all the other facts appearing, and more particularly the fact that the defendant did not agree or intend to pay a royalty to anybody but Mann, whom defendant assumed owned the patent rights, are consistent only with an entire contract, under which the defendant was to pay to whoever was entitled thereto royalties to be made up in the manner indicated in the letter of July seventh.

While, therefore, we differ with the view of the referee that the commissions in question were originally agreed to be paid the plaintiff, yet, we think, that the contract made with Mann inured by the operation of law to the benefit of the plaintiff. Mr. Mann was assuming to act for himself, and the defendant was treating with him as the principal. But does it not become evident that where it turns out that both are mistaken, and where, as here, a contract is made with respect to the use of patents which were then owned by the plaintiff, that the defendant, after using the same, would be obliged to pay to the owner thereof, when, as here, it is evident who such owner is, the price agreed to be paid for the use of the inventions covered by such letters patent?

We think that the conclusion of the referee was right, and that the judgment should be affirmed, with costs and disbursements.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs and disbursements.